UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES L. MOORE,

        Plaintiff,

v.

Case No. 8:13-cv-02660-T-26TBM

OFFICER AARON PETERMAN,
individually And as a member of Lakeland
Police Department, OFFICER MIKE
GLASS, individually and as a member of
Lakeland Police Department, and CITY of
LAKELAND, d/b/a City of Lakeland Police
Department,

        Defendants.
_____/

## AFFIDAVIT OF KEN WALLENTINE

**STATE OF UTAH**

**COUNTY OF SALT LAKE**

    **PERSONALLY APPEARED** before me, the undersigned authority, KEN WALLENTINE, who, after being duly sworn upon oath, states and affirms as follows:

    1.    My name is KEN WALLENTINE, and I am over the age of 18 years and have personal knowledge of the matters described below.

    2.    I have been a certified law enforcement officer in the state of Utah since 1982. Until April 1, 2014, I was employed with the Utah Attorney General, where I served as the Chief of Law Enforcement. I retired from full-time service and currently

work part time as a sworn Special Agent. I am currently employed as Vice President and Senior Legal Advisor for Lexipol, the nation's leading provider of law enforcement risk management resources. (My current c.v. is attached hereto as Exhibit 1.)

3. I was formerly employed as a Bureau Chief at the Utah Department of Public Safety, Peace Officer Standards and Training Division, where I supervised investigations into allegations of improper and excessive force, officer integrity, and criminal acts alleged to have been committed by law enforcement officers and supervised in-service training administration and certification for all peace officers in the State of Utah.

4. I also supervised the police service dog training and certification program for the State of Utah. I had responsibility for policy drafting and review for the parent agency, the Utah Department of Public Safety. My duties included direct supervision and command of various investigative units and agents throughout the State of Utah, supervising law enforcement officers, forensic specialists, and technicians. I commanded the State of Utah Child Abduction Response Team. I commanded the State of Utah Officer-Involved Fatality Investigation Team. I am a member of the Board of Review of the Utah Technical Assistance Program, consulting in cold case homicide and complex violent person crimes investigations. In 2010, Governor Herbert selected me for the Governor's Leadership in Public Service award for my work in public safety leadership.

5. I was formerly responsible for providing delivery of the Basic Training Curriculum related to all legal subjects, as well as certain tactical subjects, at the Utah Law Enforcement Academy. I continue to teach at the Utah Law Enforcement

Academy. I am the author of the police academy curriculum currently in use for several subjects, including, but not limited to, use of force, reasonable force, use of force and police service dog teams, search and seizure, search and seizure for police service dog teams, and use of force/firearms instructor liability. I regularly teach in the Basic Training programs of the Utah State Police Academy.

6. I am a licensed attorney, having practiced law since 1990. I am admitted to practice before the United States Supreme Court, the Courts of Appeals for the Fifth and Tenth Circuits, and the State and Federal courts in the State of Utah. I am a Master of the Bench of the American Inns of Court, Inn One, where I also serve as the past-President of the Inn of Court. I serve as an Administrative Law Judge for the State of Utah and for various counties and cities in Utah, providing hearing officer and appellate hearing services for hearings involving allegations of police officer misconduct for a variety of state agencies and municipalities. I was formerly on the faculty of Excelsior College, teaching Criminal Procedure, Evidence and Management Strategies for Public Safety.

7. The information Officer Peterman possessed when he pulled in behind Plaintiff was that Plaintiff was driving a stolen vehicle, which is a felony. Officer Peterman was faced with a resisting suspect who was disobeying commands, walking away, and informing Officer Peterman that he was going to enter the house. Plaintiff had not yet been searched for weapons. Officer Peterman also was aware that there was a passenger in the vehicle and that Plaintiff had reached back into the vehicle, disobeying Officer Peterman's explicit instructions that Plaintiff show his hands. Any reasonable officer would recognize the act of a suspect reaching back into a vehicle as

a tremendous danger signal. Officer Peterman could not see whether Plaintiff was concealing weapons. Officer Peterman had no backup at this point. The car and its passenger had not been searched.

8. Plaintiff's rapid exit from the car suggested that he would flee – a common pattern for car thieves. Visibility was poor as it was late at night and the area had open and treed fields, houses, and businesses. A pursuit on foot would have been unsafe.

9. Officer Peterman was thus presented with a situation that was tense, dynamic, uncertain, and rapidly evolving as he commanded and attempted to persuade Plaintiff to comply. Plaintiff looked directly at Officer Peterman when Officer Peterman gave Plaintiff at least two warnings that he would send the dog if Plaintiff did not comply and submit. This signaled to Officer Peterman that Plaintiff would not submit. A reasonable officer would conclude that a suspect was refusing to submit and had the potential to violently resist or flee.

10. Provided with the same information available to Officer Peterman, a reasonably and properly trained police dog handler would have recognized that deploying a police service dog to apprehend Plaintiff was consistent with generally accepted policies, practices, and training for police service dog teams.

11. The police service dog, Charief, bit Plaintiff, engaging what he accurately perceived as the suspect. Charief's actions were consistent with those of a well-trained police service dog. Officer Peterman limited the force of Charief's bite to a reasonable duration, calling Charief to "out" or release when it appeared that Plaintiff would not flee and did not appear to have immediate access to a weapon. Though it would have been reasonable to send Charief a second time when Plaintiff started to get up, Officer

Peterman refrained and Officer Glass, who had just arrived on the scene, tackled Plaintiff.

12. Charief was a particularly well-trained police service dog, and Officer Peterman and Charief won high accolades less than a month prior to this encounter in the challenging and prestigious United States Police Canine Association field performance trials – achieving the highest individual performance score in the nation and the second highest team score. I have personally observed such national competitions and am aware that the performance level to place at all, let alone in the top five team rankings, is intense. This indicates that the police service dog team was performing at an exceptionally high level at the time of the incident. Charief also shows a strong track record of on-the-job performance far above the national standard. This also shows that Charief was being handled by an unusually proficient and dedicated police dog handler.

13. In addition, the Lakeland Police Department police service dog teams are subject to multiple levels of reporting and accountability. The high level of supervision and qualify control of police dog teams by the Lakeland Police Department is consistent with police canine unit supervision best practices in the United States law enforcement community.

14. The actions of Officer Glass were also reasonable. As Officer Glass arrived on the scene, he observed Plaintiff starting to rise up, noting that one arm was extended and stiff. A reasonable law enforcement officer would immediately recognize the necessity of securing Plaintiff in a prone position in this situation. When a subject is actively resisting an officer, prone control is nearly always superior to standing control

techniques. Officer Peterman's use of Charief was a reasonable effort to achieve prone position in preparation for application of handcuffs, but once Plaintiff tried to rise from that position, Officer Glass's tackling of Plaintiff to maintain Plaintiff in a prone position was a reasonable effort to facilitate control and handcuffing.

15. After Plaintiff was told that he was under arrest, Officer Glass and Officer Dubose struggled to get Plaintiff's hands into a position for handcuffing. Application of force would not have been necessary if Plaintiff had complied with verbal directions to submit.

16. Handcuffing an arrestee with hands behind the back is universally trained and commonly required by police agencies. An arrestee who is handcuffed in front is better positioned to cause harm to officers.

17. Plaintiff was able to "turtle" his hands, which is a term used by officers and arrest control technique instructors to refer to a person who positions his or her arms beneath the body, usually intending to prevent handcuffing or to gain access to a weapon or contraband. Turtling can allow the suspect to launch a sudden attack. Reasonable officers would be on alert for a suspect's turtling of his hands and would grasp and control the suspect's arms and bring them to full visibility and into position for handcuffing as quickly as possible.

18. Empty hand strikes and knee strikes are commonly taught to officers as pain compliance and distraction techniques. Officers are trained to forcefully strike areas of large muscle mass and/or nerve concentration. Officer Glass struck Plaintiff with his fist in the upper large muscle mass near the shoulder blades in an effort to distract Plaintiff from keeping his hands turtled and concealed and unavailable for

handcuffing.

19. The hard empty fist strikes delivered by Officer Glass to Plaintiff were proper responses to Plaintiff's actively forceful resistance and were consistent with generally-accepted police practices and training to distract and to control a suspect who is physically resisting efforts to control and restrain him. The knee strikes that Officer Glass delivered to Plaintiff's upper body muscles were also proper responses to Plaintiff's resistance and were consistent with generally-accepted police practices and training to distract in order to control a suspect.

20. The fist strikes and knee strikes were reasonably limited. Officer Glass ceased any force once he was able to control Plaintiff's left hand and Officer Dubose was able to control Plaintiff's right hand.

FURTHER AFFIANT SAITH NOT.

_____
KEN WALLENTINE

SWORN TO AND SUBSCRIBED before me this 15th day of April, 2015, by Ken Wallentine.

_____
NOTARY PUBLIC, STATE OF Utah

(NOTARY PUBLIC)

Nathan Barnes
Print/Type Name of Notary Public

Personally known X or presented _____ as identification.

[Notary seal: NATHAN EVAN BARNES, NOTARY PUBLIC • STATE OF UTAH, COMMISSION# 650021, COMM. EXP. 11-11-2015]

Kenneth R. Wallentine
Disclosure information for Fed. R. Civ. P. 26
April 2015

*Curriculum vita*

*Employment*

I am a law enforcement officer in the State of Utah. I became certified as a law enforcement officer in the State of Utah in 1982. Until April 1, 2014, I was employed with the Utah Attorney General, where I served as the Chief of Law Enforcement. I am currently employed as Vice President and Senior Legal Advisor for Lexipol, the nation's leading provider of law enforcement risk management resources. I am a pert-time Special Agent with the Utah Attorney General Investigation Divison.

I was formerly employed as a Bureau Chief at the Utah Department of Public Safety, Peace Officer Standards and Training Division, where I supervised investigations into allegations of improper and excessive force, officer integrity, and criminal acts alleged to have been committed by law enforcement officers and supervised in-service training administration and certification for all peace officers in the State of Utah. I also supervised the police service dog training and certification program for the State of Utah. I had responsibility for policy drafting and review for the parent agency, the Utah Department of Public Safety.

My duties included direct supervision and command of various investigative units and agents throughout the State of Utah, supervising law enforcement officers, forensic specialists, and technicians. I commanded the State of Utah Child Abduction Response Team. I commanded the State of Utah Officer-Involved Fatality Investigation Team. I am a member of the Board of Review of the Utah Technical Assistance Program, consulting in cold case homicide and complex violent person crimes investigations. In 2010, Governor Herbert selected me for the Governor's Leadership in Public Service award for my work in public safety leadership.

*Law enforcement teaching experience and certifications*

I was formerly responsible for providing delivery of the Basic Training Curriculum related to all legal subjects, as well as certain tactical subjects, at the Utah Law Enforcement Academy. I continue to teach at the Utah Law Enforcement Academy. I am the author of the police academy curriculum currently in use for several subjects, including, but not limited to, use of force, reasonable force, use of force and police service dog teams, search and seizure, search and seizure for police service dog teams, and use of force/firearms instructor liability.

I regularly teach in the following specialized courses: Advanced Officer Course, Firearms Instructor Course, Utah Drug Academy, Utah Crime Scene Investigators Academy, Utah Sheriffs' Association Command College, First Line Supervisor Course, POST K9 Unit Administrator Course, POST Patrol Dog Handler Course, POST Narcotics Detector Dog Course, and others. I am a former police service dog handler and worked with the Uintah County

Sheriff's K9 Unit from 1995 to 2001. I continue to provide instruction and evaluation services for the POST Police Service Dog program. I am a certified POST Firearms Instructor, often serving as the lead instructor for POST Firearms courses. I am a certified TASER® Instructor. I am a certified Excited Delirium and Sudden Death Investigation Instructor. I was certified by the Los Angeles Police Department in Officer-Involved Shooting Investigation. In cooperation with the Utah Sheriffs Association and the Utah Jail Commanders Association, I teach employee selection, employee discipline, internal affairs and in-custody and officer-involved fatality investigation courses to county law enforcement and corrections command staff. I am a certified Force Science Analyst, certified by the Force Science Research Center at Minnesota State University. I am a Certified Litigation Professional, certified by the Americans for Effective Law Enforcement.

Since 1994, I have been a staff member of the K9 Academy for Law Enforcement and the International Police Canine Conference. I am a former police service dog (patrol and narcotics) dog handler. My principal responsibilities are to provide use of force training, civil liability instruction, and search and seizure instruction. In the past few years, I have restricted my travel outside the State of Utah, but have continued to provide use of force, civil rights liability, and search and seizure law enforcement training in Arizona, Iowa, and California. Over the past several years, I have lectured and trained police officers and administrators from Wyoming, Arizona, Connecticut, Florida, North Carolina, South Carolina, Iowa, Texas, Utah, Colorado, Alabama, Louisiana, Nevada, New York, New Hampshire, Vermont, Rhode Island, Maine, Delaware, Wisconsin, Michigan, Indiana, Washington, Oregon, Nebraska, Georgia, California, Nevada, and Idaho.

*Legal practice*

I am a licensed attorney, having practiced law since 1990. I am admitted to practice before the United States Supreme Court, the Courts of Appeals for the Fifth and Tenth Circuits, and the State and Federal courts in the State of Utah. I am a Master of the Bench of the American Inns of Court, Inn One, where I also serve as immediate past-President of the Inn of Court. I am an appointed Administrative Law Judge for the State of Utah, presently in inactive status due to my employment with the Attorney General. I have served both as a Hearing Officer and as the advising Administrative Law Judge for appeals before the Utah Career Service Review Board. I have also served as an Administrative Law Judge appointed in certain counties and cities in Utah, providing hearing officer and appellate hearing services for hearings involving allegations of police officer misconduct and other police employment matters.

I serve as Commission Chairman of the Salt Lake County Peace Officer Merit Service Commission, appointed by the Salt Lake County Mayor and the Mayors of the various municipalities that comprise the Unified Police Department of Greater Salt Lake County. In that capacity, I chair the commission that oversees the hiring, promotion, discipline and termination of all sworn officers of the Salt Lake County Sheriffs Office, Salt Lake County Protective Services Office and the Unified Police Department.

I am the longest serving member of the Utah Board of Mandatory Continuing Legal Education, an

independent committee serving on behalf of the Utah Supreme Court. I was first appointed in 1996 and have been recently reappointed by the Chief Justice to serve through 2016.

*Consultation practice*

In addition to my primary employment, I occasionally consult and provide expert opinions on police procedures, and use of force issues. I provide law enforcement academy curriculum consulting and accreditation review services for the United States Department of Justice. I am a program and grant reviewer for the Office of Justice Programs, United States Department of Justice. I have also served as a contract consultant to the United States Department of Justice, assigned to provide technical assistance and management consulting to various public safety entities in the United States.

I am a consultant to the Utah Risk Management Mutual Association, the state's largest risk management pool for public agencies, on matters of officer conduct and discipline, use of force, and police agency policies. I am the co-founder of, and legal advisor to, a best practices advisory group charged with developing model policies and best practices under the authority of the Utah Chiefs of Police Association, the Utah Sheriffs' Association and various state law enforcement agencies. I occasionally perform in-custody death investigations and officer-involved shooting death investigations for agencies which may lack the requisite expertise. I am the author of a number of best practice policies for law enforcement agencies, and have provided policy drafting and policy review services for several agencies, including full policy drafting responsibility for one of the state's larger law enforcement agencies.

*Professional activities and organizations*

I am a former member of the Scientific Working Group on Dog and Orthogonal Factors, an international organization facilitated by the Federal Bureau of Investigation, the Department of Homeland Security, and the Transportation Security Administration, with research and peer review coordinated by the International Forensic Research Institute at Florida International University, established to identify consensus based best practices for the use of canine detection teams. Other professional activities pertinent to law enforcement include serving as a Past-President of the Utah Peace Officers Association, former Board Member of the Utah SWAT Association, member of the International Association of Law Enforcement Educators and Trainers Association, consultant to and member of the California Narcotics and Explosive Canine Association, member of the International Association of Chiefs of Police and the Utah Chiefs of Police Association, member of the National Tactical Officers Association, member of the International Association of Law Enforcement Firearms Instructors, member of the International Association of Directors of Law Enforcement Standards and Training, member of the International Law Enforcement Educators and Trainers Association, and member of the United States Police Canine Association.

I served as co-Chairman or Chairman of the Utah Law Enforcement Legislative Committee for six years. In that capacity, I have been involved with all major law enforcement legislative initiatives in the State of Utah for the past decade. I formerly served as a gubernatorial appointee to the

Council on Peace Officer Standards and Training, under Governor Michael Leavitt, where I heard many dozens of contested disciplinary matters. I currently serve as a member on the Council on Peace Officer Standards and Training, under a new four-year appointment, effective January 2013.

*Publication history*

I have previously published a number of other professional articles, many of which have been subjected to peer review. My most recent book, *The K9 Officer's Legal Handbook*, 2nd ed., was published by Lexis/Nexis Matthew Bender in February 2014, with the 2015 Supplement published in January 2015. Another book, *Street Legal: A Guide to Pre-trial Criminal Procedure for Police, Prosecutors, and Defenders* was published in 2007 by the American Bar Association Publishing Division. It is a treatise on public safety and criminal procedure. My other published works include: *Electronic Restraints: Do They Shock the Conscience?*, The Sheriff (in editing); *Legal Risks of Failing to Care for Children of Arrested Persons*, Police Chief, V. 81, No. 10 (2014); *A Rational Foundation for Use of Force Policy, Training and Assessment*, 2014 (2) AELE Mo. L. J. 101; *Post Incident Video Review*, Police Chief, V. 68, No. 12 (2011); *Cell Site Location Evidence: A New Frontier in Cyber Investigation*, 2 A.E.L.E. Mo. L.J. 401 (2011); *Prospects, Pitfalls and Pains of Social Media and Public Safety*, The Municipal Lawyer, September 2010; *Police Department May Read Text Messages Sent on Agency-issued Pagers: City of Ontario, California v. Quon*, Police Chief, V. 57, No. 8 (2010); *Collection of DNA Upon Arrest: Expanding Investigative Frontiers*, Police Chief, V. 57, No. 1 (2010); *Targeting TASER: The New TASER Aim Points,* Law Officer, January 2010; *The Risky Continuum: Abandoning the Use of Force Continuum to Enhance Risk Management*, The Municipal Lawyer, July 2009; *Acknowledging Gender in Fitness Standards for Police: An Invitation to Liability?*, The Municipal Lawyer, January 2008; *K9 Court Testimony*, Police K9, December 2006; *United States Supreme Court Review for Corrections Managers*, Corrections Managers Report, October 2006; *Criminal Procedure: The Street Cop's Guide* (Aspen Press 2005); *Conduct Unbecoming an Officer*, The Municipal Lawyer, January, 2005; *Limits on Off-Duty Police Employment*, The Municipal Lawyer, Spring 2004; *Conjugal Prison Visits*, Corrections Manager, March, 2003; *Life in the Law* (BYU Press 2002), co-author; *Investigating In-Custody Death*, Corrections Manager Report, October 2002; *Police Canine Risk Management*, The Municipal Lawyer, July 2002; *The New Paradigm of Firearms Training*, IADLEST News, Spring 2001; *Use of Deadly Force Instructor Curriculum* (monograph), POST, Spring 2001; *Pepper Spray as Use of Force*, Police, October 2000; *Are Drug Courts the Wave of the Future?*, Police, April 2000; *Legal Risks of Tactical Operation*, Police, April 1999; *Dogs of War (K9 Use of Force)/FLSA & K9 Handlers*, Police, December 1998/January 1999; *No-knock & Nighttime Searches*, Police, September 1998; *The Respectable Roadblock Ruse*, Police, June 1998; *If at First You Don't Succeed . . .*, Clark Memorandum, Fall 1998; *Preparing and Executing Search Warrants* (UPOA 1998); *Taking a Real Bite Out of Crime: Successful Risk Management for K9 Programs*, Utah Peace Officer, Summer 1996; *Lobbying, PACs and Campaign Finance* (West Publishing 1994), co-author; *Heeding the Call: Search and Seizure Jurisprudence Under Article I, Section 14, of the Utah Constitution*, 17 Utah Journal of Contemporary Law 267 (1991); *RICO & the Prime: Taking a Bite out of Crime?*, 2 Utah Bar Journal 7 (1991); *Margaret Bush Wilson and Shelley v. Kraemer*, 4 B.Y.U. J. Pub. Law 207 (1990); *Wilderness Water Rights: The Status of Reserved Rights After*

*the Tarr Opinion*, 4 B.Y.U. J. Pub. Law 357 (1989); *Negligent Hiring: The Dual Sting of Pre-Employment Investigation*, 8 Utah B.J. 15 (1989), and a variety of columns addressing law enforcement issues and published by PoliceOne.com. I am the author of a reference book currently in use in the Utah Law Enforcement Academy, as well as other police academies throughout the United States, titled *Criminal Procedure: The Street Cop's Guide* (Aspen Press 2005).

*Litigation history*

I have testified and/or provided depositions in the following cases which are generally related to the subject of the instant litigation in the past four years:

*Frasier v. McCallum, et al.*, No. 1:14-cv-00009-MP-GRJ, United States District Court for the Northern District of Florida, 2015. Deposition testimony given on behalf of defendant. Subject matter: mistaken arrest.

*Wolffis v. City of Gainesville*, No. 1:14-cv-130, United States District Court for the Northern District of Florida, 2015. Deposition testimony given on behalf of defendant. Subject matter: excessive force.

*Castillo v. City of Tempe*, No. 2:12-CV-02225-ROS, United States District Court for the District of Arizona, 2015. Trial testimony given on behalf of defendants. Subject matter: excessive force.

*Stoedter v. Salt Lake County, et al.*, No. 2:12-CV-255-BJ, United States District Court for the District of Utah, 2015. Trial and deposition testimony given on behalf of the defendants. Subject matter: police force to effect arrest.

*Williams v. TASER, Internat'l and the City of Charlotte*, No. 3:12-CV-838, United States District Court for the Western District of North Carolina, 2014. Trial and deposition testimony given on behalf of the defendants. Subject matter: wrongful death.

*Ali v. City of Tempe*, No. CV2013-091264, Superior Court, State of Arizona, Maricopa County, 2014. Deposition testimony given on behalf of defendants. Subject matter: excessive force.

*Texiera v. United States of America, et al.*, No. 2:11-CV-02022, United States District Court for the District of Nevada, 2014. Trial and deposition testimony given on behalf of the defendants. Subject matter: police canines.

*Clark v. Box Elder County et al.*, No. 1:13-cv-00079-CW, United States District Court for the District of Utah, 2014. Deposition testimony given on behalf of the defendants. Subject matter: wrongful death.

*Campbell & Gemperline v. City of Springboro et al.*, No. 1:08-cv-00737, United States District Court for the Southern District of Ohio, 2013. Deposition testimony given on behalf of the defendants. Subject matter: police canines.

*Thompson v. City of Lebanon*, No. 1:10-CV-0035, United States District Court for the Middle District of Tennessee, 2013. Deposition testimony given on behalf of the defendants. Subject matter: wrongful death.

*Chief v. West Valley City Police, et al.*, No. 2:11-CV-643, United States District Court for the District of Utah, 2013. Deposition testimony given on behalf of the defendants. Subject matter: wrongful death.

*Boggs v. City of Waterloo*, No. LACV116584-CW, Blackhawk County District Court, 2013. Deposition testimony given on behalf of defendants. Subject matter: police pursuit.

*Alusa v. Salt Lake County Sheriff, et al.*, No. 2:11-CV-00184-CW, United States District Court for the District of Utah, 2012. Deposition testimony given on behalf of the defendants.

*Schmidtke v. Marion County Sheriff*, No. 5:10-CV-293-OC-10, United States District Court for the Middle District of Florida, 2012. Deposition testimony given on behalf of the defendants.

*Woodward v. City of Gallatin, et al.*, No. 3:10-CV-01060, United States District Court for the Middle District of Tennessee, 2012. Deposition testimony given on behalf of the defendants. Subject matter: wrongful death.

*Minor v. Johnson, et al.*, No. 1016-CV08762, Circuit Court of Jackson County, Missouri, 2012. Deposition testimony given on behalf of defendants. Subject matter: wrongful imprisonment.

*Garcia v. Sacramento City, et al.*, No. 2:10-CV-00826-JAM-KJN, United States District Court of California, Eastern Division, 2012. Deposition testimony given on behalf of the defendants. Subject matter: police canines.

*Cavanaugh v. Woods Cross City, et al.*, No. 1:08CV00032, United States District Court of Utah, Central Division, 2011. Trial testimony given on behalf of the defendants. Subject matter: excessive force and TASER use.

*Ibarra v. City of Watsonville*, Watsonville Municipal Civil Service Commission, 2011. Trial testimony given on behalf of Respondent. Subject matter: police canines and excessive use of force.

*Jones v. City of Waterloo*, No. 6:10-CV-02014-LRR United States District Court of Iowa, 2011. Trial testimony given on behalf of defendant. Subject matter: police canines.

*Cardall v. Thompson, et al.* Case No. 2:10-CV-00305-CW, United States District Court of Utah, Central Division, 2011. Deposition testimony given on behalf of the defendants. Subject matter: excessive force, wrongful death.

*Krause & Martin v. Manalapan Township*, No. 3:09-CV-0287, United States District Court of New Jersey, 2010. Deposition testimony given on behalf of defendant. Subject matter: police

canines.

*Mitchell v. Dow*, No. 2:08-CV-00726-DB, United States District Court of Utah, 2010. Trial testimony given on behalf of defendants. Subject matter: excessive force and TASER use.

*Al-Asadi v. City of Phoenix*, No.2:09-CV-00047-PHX-DGC, United States District Court of Arizona, 2010. Deposition testimony given on behalf of defendants. Subject matter: excessive force.

*United States v. Beltran-Palafox*, No. 09-40022-01/02 JAR, United States District Court of Kansas, 2010. Court testimony given on behalf of the prosecution. Subject matter: improper training and whether a drug detector dog was reliable and whether the dog was cued.

This list is accurate for dates between December 31, 2010 and April 1, 2015.

*Consultation and Expert Witness fees, effective January 1, 2015 through December 31, 2015*

For those matters which progress beyond an initial brief consultation, I charge $250.00 per hour for examination of reports and documents, site visits, interviews, administrative tribunal, deposition or court testimony, with a minimum fee of $1,000.00 for deposition or court testimony. I bill for actual travel expenses and a travel fee of $1,000.00 per day/part-day for travel to western states and $1,500.00 per day/part-day outside western states. Unless airline tickets are pre-paid by the client, I travel only with tickets purchased as fully refundable.